UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GENESIS BRAND SEED, LTD.,
PLATINUM GENETICS, LLC, and
WILLIAM D. BYRUM,

      Plaintiffs,                                 Case No. 1:12-CV-803

v.                                                   HON. GORDON J. QUIST

LIMAGRAIN CEREAL SEEDS, LLC,

      Defendant.
_____/

## OPINION

Plaintiffs, Genesis Brand Seed, Ltd., Platinum Genetics, LLC, and William D. Byrum (collectively "Byrum"), brought this action against Defendant, Limagrain Cereal Seeds, LLC, seeking declaratory judgment of Byrum's rights pursuant to a Settlement Agreement in a prior case between the parties.[1] Limagrain has filed a Motion to Dismiss (docket no. 17). On March 7, 2013, the Court heard oral argument on the motion. For the reasons set forth below, the Court will grant Limagrain's motion and dismiss the case.

### I. FACTUAL BACKGROUND

Between 2005 and 2010, Byrum entered into a series of agreements with Sam Brown, doing business as Genesis Seed Research, to market Brown's soft red wheat ("SRW") seeds and implement a soft white wheat ("SWW") breeding program. Byrum provided Brown a germplasm of several SWW varieties and at least one SRW variety. Brown and Genesis Seed Research used

---

[1] Case no. 1:11-cv-738.

the germplasm to breed new varieties of SWW. In 2010, Limagrain purchased Brown's breeding facility and plants, and took possession of the SWW breeding program. Limagrain later filed litigation in this Court related to the SWW breeding program and the parties entered into a Settlement Agreement.

In the Settlement Agreement, Limagrain assigned to Byrum all "Byrum SWW"[2] growing at Brown's facilities through the 2012 harvest. In exchange, Byrum agreed to "discontinue all marketing, multiplying, growing and planting" of "Limagrain Varieties".[3]

After entering the Agreement, Limagrain informed Byrum of the possibility that (1) due to the wind, some Limagrain Varieties *may have* unintentionally bred with Byrum's SWW (contamination), and (2) during harvesting, Limagrain *may have* inadvertently mixed some Limagrain Varieties with Byrum's SWW supply (commingling). To address this hypothetical problem, Limagrain requested that Byrum inform Limagrain if Byrum were to ever encounter a Limagrain Variety descendant in his possession. At present, the parties cannot verify—without extensive and expensive genetic testing—whether any of the wheat in Byrum's possession pursuant to the Settlement Agreement includes a Limagrain Variety. Such genetic distinctions between the varieties are not visible to the naked eye.

---

[2] The Settlement Agreement defines "Byrum Companies Soft White Wheat" as "the soft white wheat plants and seed either located at or growing at Mr. Brown's facility in Battleground, Indiana which have in their lineage any soft white wheat parent from one or more of the following lines (and regardless of what other line might be in that lineage) ...." (Settlement Agreement ¶ 1.17, Docket no. 6-1, Page ID 116.) The definition goes on to list specific lines of soft white wheat. (*Id.*)

[3] The Settlement Agreement defines a Limagrain Variety or "LCS Variety" as all soft red wheat varieties provided by Brown to Genesis Ag (a company owned by Byrum's son that distributed Brown's soft red wheat between 2001 and 2004 that is no longer in operation) between 2001 and 2010 ("Brown Variety") and any soft red wheat variety having a Brown Variety in its parentage.

Byrum has filed this case for declaratory judgment. Byrum asks this Court to declare that Byrum has full rights to all the wheat plants and seeds in his possession—regardless of whether they include Limagrain Varieties—and that Limagrain "has no right, title or interest in any of the plants and seeds delivered to [Byrum] by [Limagrain] during June and July, 2012 in connection with the 2012 harvest, including the remnants from the 2011 harvest." (Compl., Docket no. 1, Page ID 22.) Byrum also asks this Court to permanently enjoin Limagrain from claiming ownership, control, or a right of possession to any wheat varieties from the 2012 harvest, and remnants of the 2011 harvest, that contain Byrum's germplasm as described in the Settlement Agreement. (*Id.*) Byrum also asserts claims for breach of contract and promissory estoppel.

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010). Rule 12(b)(1) motions may be brought either as a facial attack or a factual attack. *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007)). A facial attack questions the sufficiency of the allegations in the pleading. *Id.* In a factual attack, "the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). When reviewing a facial attack, a court takes the allegations in the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, however, there is no presumption that the factual allegations of the complaint are true. *Id.*

3

For a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint need not contain "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007). A plaintiff is obligated to allege sufficient facts to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.* at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). In deciding whether the plaintiff has alleged a plausible claim, a court must accept the factual allegations in the complaint as true. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). However, this presumption is not applicable to a complaint's legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949–50.

### III. DISCUSSION

#### A. Ripeness

In support of its Motion to Dismiss, Limagrain argues that Byrum's claims are not ripe for adjudication. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, __ U.S. __, 133 S. Ct. 1138, 1146 (2013). "'[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation on federal-court jurisdiction to actual cases or controversies.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S. Ct. 1841, 1861 (2006)). "'One element

of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997)). Standing "requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, __ U.S. __, 130 S. Ct. 2743, 2752 (2010). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2, 112 S. Ct. 2130, 2138 n.2 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 1725 (1990)). In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, the Supreme Court observed,

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941).

The case or controversy requirement has engendered numerous justiciability doctrines that further define the limits of federal jurisdiction, including the ripeness doctrine. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S. Ct. 3325, 3332 (1985). The basic rationale of the ripeness doctrine "'is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 1515 (1967)). In the Sixth Circuit, courts weigh three factors in deciding whether a claim is ripe for judicial review: (1) the likelihood that the harm alleged will ever come to pass, (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits

of the parties' respective claims, and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings. *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995). The Sixth Circuit has paid "particular attention" to the first factor. *United Steelworkers of Am. Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194–95 (6th Cir. 1988) (citing *Thomas*, 473 U.S. at 580–81, 105 S. Ct. at 3332–33, for the proposition that a case is not ripe when the controversy is based on contingent future events that "may not occur as anticipated, or indeed may not occur at all"). The burden is on the party seeking to invoke jurisdiction to "demonstrate a realistic danger of sustaining a direct injury." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2308 (1979). However, "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" *Id.* (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S. Ct. 658, 663 (1923)). In the context of declaratory judgments, "a plaintiff need not 'bet the farm, so to speak, by taking the violative action,'" before the Court may find a controversy ripe for adjudication. *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 971 (6th Cir. 2009).

In this case, Byrum has the burden of showing that his alleged injury is imminent or certainly impending. Byrum frames the injury as a cloud over his title to the SWW breeding program, which he argues would reduce its market value if he decided to sell the program. Limagrain argues that the alleged harm is that Byrum would violate the Settlement Agreement, and thereby expose himself to legal liability. From that perspective, Limagrain argues that the likelihood of harm is minuscule: there is only a small probability that any Limagrain Varieties contaminated or commingled with Byrum's wheat. Additionally, the likelihood that Byrum would select any of those Limagrain Varieties for commercial development—out of the many seeds in Byrum's possession—is remote.

In support of declaratory judgment, Byrum cites *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2007). In *MedImmune*, the plaintiff sought a declaration that the defendant's patent was invalid after the parties entered into a licensing agreement. The defendant argued that as long as the royalties were paid, the plaintiff did not have concern that it would be sued, so there was no controversy. The Supreme Court found that there was a controversy because the plaintiff was paying royalties under the threat of a lawsuit, and the plaintiff would not have to pay anything if the patent was declared invalid. The Court observed that the purpose of declaratory judgment is to ameliorate the dilemma posed by "putting the challenger to the choice between abandoning his rights or risking prosecution." *Id.* at 129, 127 S. Ct. at 772–73. Thus, the Court refused to force the plaintiff to breach its licensing agreement to create an actual controversy. The plaintiff had demonstrated a "sufficient immediacy and reality" to warrant a declaratory judgment. *Id.* at 127, 127 S. Ct. at 771.

The facts of *MedImmune* are distinguishable from the present facts. In this case, Byrum is not forced to make a choice between exercising his rights or risking a lawsuit. First, Limagrain's position is that Byrum will not violate the Settlement Agreement unless Byrum attempts to make a Limagrain Variety commercially available. Byrum concedes that it will take a minimum of several harvest seasons before Byrum's seeds would be available for commercial distribution. Second, Byrum does not intend to develop all of the seeds in his possession. The likelihood that Byrum will select for distribution a contaminated or commingled Limagrain Variety from among his many seeds is remote. Limagrain likens the likelihood to selecting a needle from among many haystacks. That Byrum would select a Limagrain Variety for commercial distribution is contingent upon several events: (1) there actually exists at least one contaminated or commingled Limagrain Variety among Byrum's seeds, (2) Byrum selects a Limagrain Variety to breed for multiple,

7

successive harvest seasons, and (3) Byrum selects a Limagrain Variety for commercial distribution. Thus, the alleged harm that Byrum would violate the Settlement Agreement involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81, 105 S. Ct. at 3333.

Byrum urges the Court to view his alleged injury from the perspective of a producer seeking to sell a product. Byrum argues that the very possibility that he currently possesses Limagrain Varieties is a cloud over Byrum's title that would reduce the breeding program's market value should Byrum decide to sell it. However, Byrum concedes that he does not have any concrete plans to sell the breeding program, nor does he have a prospective buyer. Thus, even viewing the alleged injury from Byrum's perspective, Byrum has not demonstrated an imminent or certainly impending injury. While there is a possibility that Byrum would invest in developing seeds to which he later discovers Limagrain claims a right, the likelihood that such controversy would arise is contingent upon future events that may not occur as anticipated, or may not occur at all. Therefore, the first factor, likelihood of harm, weighs against declaratory judgment and in favor of granting the motion to dismiss.

In the Sixth Circuit, courts weigh two other factors in deciding whether a claim is ripe for judicial review: whether the factual record is sufficiently developed to produce a fair adjudication on the merits of the claims, and the hardship to the parties if judicial relief is denied at this stage in the proceedings. *Adult Video Ass'n*, 71 F.3d at 568. The second factor, the factual record, weighs in favor of Limagrain. For example, it is almost impossible to know whether Byrum possesses any Limagrain Varieties. Additionally, Byrum asks the court to declare that Byrum owns all seeds in Byrum's possession—regardless of lineage—on the basis that Limagrain acted negligently in growing, harvesting, or sorting Byrum's seeds. However, the record is inadequate to determine

whether Limagrain acted negligently. The third factor, hardship to the parties if relief is denied at this stage, does not weigh heavily in favor of either party. Byrum has not alleged that he plans to sell his breeding program, that he has an interested buyer, or has taken any other steps to sell his breeding program. Altogether, the three factors weigh in favor of granting Limagrain's motion to dismiss because the controversy is not ripe.[4]

## B. Byrum's Remaining Claims

Byrum also asserts claims for breach of contract and promissory estoppel. In order to survive a motion to dismiss, a complaint must contain sufficient factual allegations to sustain a recovery under some viable legal theory. *See, e.g.*, *Southeast Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 671 (6th Cir. 2006). Although a court must accept the well-pleaded facts in the complaint as true, a court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

In this case, accepting the factual allegations as true, Byrum has not alleged sufficient factual allegations to support a claim for breach of contract. First, Byrum's breach of contract claim is premised on his allegation that Limagrain has claimed ownership to "substantial portions" of the plants and seeds in Byrum's possession. Limagrain's argument is that it claims rights to Limagrain Variety seeds, a small number of which may, hypothetically, be in Byrum's possession. Limagrain has not claimed ownership of any Byrum SWW seeds. Second, Byrum cannot identify any section of the contract that Limagrain has allegedly breached. Therefore, Byrum fails to state a claim for breach of contract.

---

[4] Byrum has also filed a motion to amend his Complaint (docket no. 44) and a Proposed Amended Complaint (docket no. 46). However, the Proposed Amended Complaint does not rectify Byrum's lack of standing.

Similarly, Byrum has not alleged sufficient facts to support a claim for promissory estoppel. In Michigan, a claim for promissory estoppel requires, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." *Charter Twp. of Ypsilanti v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556, 559 (1993). Courts will enforce such a promise "if injustice can be avoided only by enforcement of the promise." *Id.* "Promissory estoppel requires an actual, clear, and definite promise." *Id.* "[R]eliance is reasonable only if it was induced by an actual promise." *Id.* (internal citations and quotation marks omitted).

In this case, Byrum alleges that Limagrain "made one or more promises" to Byrum following the Settlement Agreement that were "clear and definite" and involved "the nature and extent of the plants and seeds that were going to be delivered" in connection with the 2012 harvest. However, Byrum does not identify *any* promise on which he relied. Rather, Byrum cites generally to the "2011 Harvest Documents" and "2012 Harvest Data." (Compl., Docket no. 1, Page ID 22.) This is insufficient for the Court to draw the reasonable inference that Limagrain is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. Thus, Byrum has failed to allege a promise on which Byrum could have reasonably relied. The Court will therefore dismiss Byrum's claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Limagrain's Motion to Dismiss (docket no. 17).   A separate order will issue.


Dated: May 6, 2013                              /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                      UNITED STATES DISTRICT JUDGE